No. 88-136

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

---

BONNIE K. CROCKETT,

Plaintiff and Appellant,

-vs-

CITY OF BILLINGS, PUBLIC COMMUNICATIONS
DISPATCH CENTER,

Defendants and Respondents.

---

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable William J. Speare, District Judge.

COUNSEL OF RECORD:

For Appellant:

Jones Law Firm; Blair Jones, Billings, Montana

For Respondent:

Paul J. Luwe, City Attorney's Office, Billings,
Montana

---

Submitted on Briefs: Aug. 4, 1988

Decided: September 22, 1988

Filed: SEP 2 2 1988

Ethel M. Harrison

Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.


Bonnie K. Crockett appeals from a judgment by the District Court of the Thirteenth Judicial District, Yellowstone County, in this case brought against the City of Billings (City) for employment discrimination. The District Court ruled in favor of the defendant City. We affirm.

The issues raised on appeal are:

1. Whether the District Court considered and applied the standard of proof appropriate in a discrimination case?

2. Whether the findings of the District Court are supported by sufficient credible evidence?

3. Whether the District Court erred in admitting into evidence exhibits containing hearsay?

4. Whether the District Court appropriately considered the reasonable cause finding of the Montana Human Rights Commission?

Bonnie K. Crockett (Crockett) was employed by the City of Billings as a telephone operator from March 10, 1981 until July 13, 1983. In July of 1983, she voluntarily resigned, after notice, from her position with the City. She then sought work in San Diego. Crockett subsequently decided to return to Billings upon learning of her grandmother's illness, and toward this end, Billings Police Officer Gary Crockett traveled to San Diego to help Crockett move back to Billings. The two were married during the move back to Billings.

In January of 1984, the City accepted applications to fill a telephone operator job opening in the Public Communications Dispatch Center (Center). Crockett applied for this telephone operator position, one she previously had

2

held with the City. She passed the preliminary screening test given to all applicants and subsequently was interviewed on January 11, 1984. The interview was conducted by a selection committee of three people: Jessee Gonzalez (Gonzalez), supervisor of the Center; Captain John Hall, liaison officer between the Billings Police Department and the Center; and Richard Owens, a lead worker at the Center.

Crockett was asked numerous questions during the interview, including one question about how she would deal with those officers who lacked confidence in her ability to satisfactorily perform her job. Because of the demands of the position and concern for the safety of the officers and public, she also was asked if she would be able to dispatch her husband into a dangerous situation.

Following interviews with all the top candidates, the selection committee ranked the top four to six applicants in order of hiring priority. Crockett was ranked fourth or fifth. Although Gonzalez had discretion to select any of the top ranked applicants, he routinely selected the applicant ranked number one. Consequently, on January 17, 1984, Gonzalez offered the job to Camille Brynes, a single woman qualified for the position by virtue of her previous PBX switchboard experience but without previous work experience in the Center.

The City asserted Crockett was not ranked higher, and consequently was not hired, because of numerous performance problems during her former employment with the Center. More specifically, Gonzalez had extended her probationary period another ninety days because of problems with "attitude adjustment, work performance, absenteeism" and her need for increased productivity. Gonzalez notified Crockett of this extension by a letter written September 10, 1981. Although her performance appraisal for the period from July to

3

December of 1981 noted her job aggressiveness and aptitude for learning, it commented upon her need to control flareups, to adjust her attitude when confronted with directives or policy changes, and to study street locations. Crockett was counseled about these problems on January 5, 1982. Her performance appraisal for the period of December 1981 though December 1982 again noted some performance problems, including her lax attendance without good excuse, defensiveness when given constructive criticism, nonconstructive use of idle time, irregular attendance at lead worker meetings, and excessive use of the telephone for personal calls. Additionally, Crockett received a written warning on February 18, 1982, because she made a shift change without the approval of the lead worker and then failed to notify the lead worker of illness preventing her from reporting for duty the following day. However, Crockett asserted that another co-employee requested this change, which Crockett obliged, and that the co-employee, not herself, thus was responsible for obtaining lead worker approval.

The City asserted that problems with various police officers also led to Crockett's lower ranking. In 1982, four dispatch complaints were filed, with two verified as valid. These complaints included failure to acknowledge a call, which resulted in no backup, and to properly complete an abandoned automobile form. In 1983, six complaints concerning Crockett's job performance were filed, with four verified as valid complaints; these included two improper officer dispatches, an employee dispute involving others in the Center, and a mix-up in complaint dispatch forms between Crockett and several others. Consequently, in September of 1983, Lieutenant Christensen expressed concerns about the

4

rehire of Crockett should she reapply for a position with the Center.

Crockett alleged that she was not hired because of her marriage to a police officer and asserted that such marital discrimination was illustrated by the statements made by Gonzalez to V.E. Henman, business representative for the Teamsters Union which represents Center employees, and to Gary Angel, an employee with the City. Henman alleged that in a telephone conversation with Gonzalez on January 20, 1984, Gonzalez stated that he did hot hire Crockett because she was married to a police officer. Gary Angel also asserted that he and his supervisor Paul Totten heard Gonzalez, while at a Center orientation session, make a similar comment about his reason for not hiring Crockett. However, city records indicate that no orientation sessions were conducted in the Center in 1984 and that Paul Totten was not hired until 1985. Further, Gonzalez denied making any such comment to Angel or Henman.

Both Crockett and her husband, Gary Crockett, stated that Gonzalez told them at a meeting with Gonzalez on January 23, 1984, that she was not hired primarily because of problems with police officers, but that her marriage to a police officer also had something to do with the decision not to rehire her. Yet, Crockett failed to claim on a subsequent preliminary inquiry by the Montana Human Rights Commission (Commission) that Gonzalez made any such reference to her marital status during their meeting with him. The charge of discrimination she filed with the Commission similarly failed to mention any reference by Gonzalez to her marital status. A letter written by Gary Crockett to the Commission, concerning the conversation with Gonzalez on January 23, 1984, states that they only were told that Crockett was not hired because of past problems with

officers. Additionally, Gonzalez denied stating during the meeting with Crockett, that her marriage was a reason for his decision not to rehire her.

Crockett filed a complaint with the Commission on February 17, 1984, alleging that the City discriminated against her by failing to hire her because of her marital status. The Commission issued a reasonable cause finding on April 25, 1985, following a preliminary investigation. No hearing was conducted, but instead on October 21, 1985, at the request of the City, the Commission issued a right to sue letter.

On January 10, 1986, Crockett filed suit in District Court alleging marital discrimination by the City. A nonjury trial was conducted on June 22 and 23, 1987. The District Court entered judgment against Crockett on December 18, 1987, holding that the City did not discriminate against Crockett because of her marital status when it failed to rehire her for the position for which she had applied. This appeal followed.

The first two issues raised on appeal involve the appropriate standard of proof in an employment discrimination case and the sufficiency of the evidence to support the District Court findings. To reduce any unnecessary duplication, we will discuss these two issues together.

The provisions that assure protected groups freedom from discrimination under Title 49 of the Montana Human Rights Act are closely modeled after the provisions of Title VII of the Federal Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Consequently, Montana courts have examined the rationale of federal case law and have expressly adopted, for all cases involving disparate treatment of a protected class member, the three-tier standard of proof set forth in McDonnell Douglas Corp. v. Green (1973), 411 U.S. 792, 93

S.Ct. 1817, 36 L.Ed.2d 668. Johnson v. Bozeman School Dist. (Mont. 1987), 734 P.2d 209, 44 St.Rep. 531; European Health Spa v. Human Rights Comm'n (Mont. 1984), 687 P.2d 1029, 41 St.Rep. 1766; Martinez v. Yellowstone Co. Welfare Dept. (Mont. 1981), 626 P.2d 242, 38 St.Rep. 474.

Appellant, who was married in September of 1981, was clearly a member of a protected class. Marital status is a protected status and §§ 49-2-303 and 49-3-201, MCA, prohibit an employer from discriminating on the basis of such marriage.

> 49-2-303. Discrimination in Employment.
> (1) It is an unlawful discriminatory practice for:
>
> (a) an employer to refuse employment to a person, to bar him from employment, or to discriminate against him in compensation or in a term, condition, or privilege of employment because of his . . . marital status . . .
>
> . . .
>
> 49-3-201. Employment of state and local government personnel. (1) State and local government officials and supervisory personnel shall recruit, appoint, assign, train, evaluate, and promote personnel on the basis of merit and qualifications without regard to . . . marital status. . .

Further, appellant's claim of employment discrimination arose from her alleged unequal and discriminatory treatment under hiring procedures which on their face do not discriminate against applicants married to police officers. This case thus involves a claim of disparate treatment of a protected class member and we hold that the standard of proof set forth in McDonnell Douglas is applicable to this case.

The first tier of proof in McDonnell Douglas, requires a complainant to initially establish a prima facie case of discrimination by proving the following four elements by a preponderance of the evidence:

> (i) that he belongs to a [protected class] . . . ; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

McDonnell Douglas, 411 U.S. at 802. The Supreme Court in McDonnell Douglas, however, noted that this standard of proof is flexible as the four elements may not necessarily apply to every disparate treatment claim. In Martinez, we thus recognized that the fourth element in McDonnell Douglas could be satisfied simply by showing that a job vacancy is filled by an applicant who is not a member of the particular protected group. See Martinez, 626 P.2d at 246 (citing Crawford v. Western Elec. Co., Inc. (5th Cir. 1980), 614 F.2d 1300).

The District Court considered and applied the standard of proof set forth in McDonnell Douglas and found that Crockett had established a prima facie case of employment discrimination. The District Court did not expressly state its application of the appropriate McDonnell Douglas standard. However, its findings of fact 2-9, cited as support for its determination that Crockett had established an initial prima facie case of marital discrimination, indicate the court followed the initial McDonnell Douglas four-tiered test. The District Court found that Crockett was a married applicant, that she had applied for a job posted by

8

the City and that she was qualified for this job by virtue of her previous experience, that she was rejected despite her qualifications, and that the job was instead filled by a single woman. Neither party contests the sufficiency of these findings of fact.

The establishment of a prima facie case under McDonnell Douglas raises an inference of discrimination at law. The burden then shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." McDonnell Douglas, 411 U.S. at 802. Defendant only bears the burden of production of a legitimate nondiscriminatory reason. This burden comprises the second tier of proof under McDonnell Douglas; it is imposed on the defendant for two reasons:

> [It] meet[s] the plaintiff's prima facie case by presenting a legitimate reason for the action and . . . frame[s] the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext.

Texas Dept. of Community Affairs v. Burdine (1981), 450 U.S. 248, 255-56, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207, 217. A defendant thus only need raise a genuine issue of fact by clearly and specifically articulating a legitimate reason for the rejection of an applicant. Johnson, 734 P.2d at 212.

As noted in McDonnell Douglas, even past conduct may be relevant to an employer's assessment of present fitness for a job. McDonnell Douglas, 411 U.S. at 806-07, n. 21 (citing Garner v. Bd. of Public Works of Los Angeles (1951), 341 U.S. 716, 71 S.Ct. 909, 95 L.Ed. 1317). A defendant need not adopt a hiring procedure that maximizes the hiring of any one protected class, nor even persuade the court that the defendant's decision was actually based upon the proffered reasons. Furnco Constr. Corp. v. Waters (1978), 438 U.S.

9

567, 577-78, 98 S.Ct. 2943, 2950, 57 L.Ed.2d 957, 968; Burdine, 450 U.S. at 254.

The District Court's conclusion of law number 3 clearly indicates that the court also considered and applied the facts to this second trier of proof required in McDonnell Douglas. The court concluded that the reason offered by the defendant in support of its decision not to rehire plaintiff, namely past job performance problems, constituted a legitimate nondiscriminatory reason.

Appellant contends, however, that the findings of past performance problems by the court were not supported by the evidence. Upon review, we must view the evidence in "a light most favorable to the prevailing party" to determine whether the findings of the trial court are supported by substantial credible evidence. Wallace v. Wallace (1983), 203 Mont. 255, 259, 661 P.2d 455, 457 (quoting from In re Marriage of Bosacker (1980), 187 Mont. 141, 145, 609 P.2d 253, 256). We will not set aside the District Court's findings of fact unless they are unsupported by substantial credible evidence and thus clearly erroneous. See Rule 52(a), M.R.Civ.P.

The District Court based its determination that prior performance problems did in fact exist upon various exhibits introduced into evidence and upon witness testimony. A letter documented the extension of Crockett's initial probationary period on September 10, 1981, because of absenteeism, work performance, and attitude problems. Further, performance appraisals on Crockett's job performance during the period of July 1981 to December of 1982 documented numerous job performance problems including defensiveness when constructively criticized, flareups of temper, lax attendance without excuse, and the excessive use of the office telephone for personal calls. Testimony indicated that Crockett was counseled about these performance problems

on January 5, 1982, and again on January 3, 1983. Captain John Hall testified that he had received numerous complaints from officers about Crockett's job performance. Those written complaints which were found valid after investigation included complaints for failure to acknowledge a call resulting in no back-up, failure to properly complete an abandoned automobile form, mix-up in complaint dispatch forms involving others, involvement in an employee dispute while at work, and two improper officer dispatches. The above evidence certainly amounts to substantial credible evidence supporting the District Court's finding of legitimate job performance problems. The District Court did not commit legal error when it thereafter concluded that a legitimate nondiscriminatory reason existed supporting the defendant's decision not to rehire Crockett.

Once the defendant has produced a legitimate reason in support of its decision not to rehire, the plaintiff then must show that the defendant's reasons are in fact a pretext. McDonnell Douglas, 411 U.S. at 802; Martinez, 626 P.2d at 246. This is the third and last tier of proof required in McDonnell Douglas. As stated in Burdine, proof of the pretextual nature of the defendant's proffered reasons may be either direct or indirect:

> She may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.

Burdine, 450 U.S. at 256. Ultimately, the plaintiff must persuade the court by a preponderance of the evidence that the employer intentionally discriminated against her. Johnson, 734 P.2d at 213.

11

The District Court's conclusion of law number 4 states: "Based on findings of fact 15 through 18, Plaintiff failed to show that the reason articulated by Defendant for not hiring Plaintiff was a pretext." This conclusion illustrates that the District Court did in fact appropriately consider and apply the facts to the third-tier standard of proof set forth in McDonnell Douglas. We conclude that the District Court properly considered and applied all three tiers of proof required in McDonnell Douglas.

Appellant again contends, however, that the evidence does not support the court's conclusion that the articulated performance problems were legitimate. We hold, however, that substantial credible evidence exists in support of the court's determination that marital status was not the more likely motivation behind the City's decision. Evidence was introduced contradicting the testimony of Gary and Bonnie Crockett, Gary Angel, and Bud Henman. This contradicted testimony had formed the basis of plaintiff's allegations of discrimination, as all three alleged they were told by Gonzalez that Crockett was not hired because she was married to a police officer.

Gonzalez himself testified under oath that he did not state to anyone that Crockett's marital status was a reason for her nonhire. The evidence indicated that Paul Totten was in fact not even hired until 1985, the year after Gary Angel alleged Totten was present when Gonzalez made the disputed discriminatory comments at a work orientation session. Additionally, the charge of discrimination filed by Crockett failed to mention the alleged discriminatory comment by Gonzales. Further, the letter Gary Crockett wrote to the Commission stated only that they were told she was not hired because of her past problems with officers. All the above mentioned testimony and evidence was offered to refute any

direct evidence of marital discrimination. We hold that this evidence combined with the previously mentioned credible evidence of performance problems amounted to substantial credible evidence which supported the District Court's determination that marital status was not the motivating reason for nonhire. The fact that the previously introduced complaints and reprimands were written and filed when Crockett was single, further supports the District Court's determination that evidence of prior performance problems was in fact credible.

The Court of Appeals for the Ninth Circuit has held, and we think rightly so, that a defendant must be given an additional opportunity to prove that he or she would have made a similar employment decision, irrespective of any unlawful discrimination, only if liability for unlawful discrimination is first established. See, Muntin v. State of California Parks & Recreation Dept. (9th Cir. 1984), 738 F.2d 1054, 1056. The District Court's ultimate determination that the plaintiff failed to prove unlawful discrimination in this case prevents any need for examining the weight given an alleged unlawful motive. Consequently, the District Court did not err by confining its findings to a consideration and application of the standard of proof found in McDonnell Douglas.

The third issue raised on appeal is whether the District Court erred by admitting exhibits G, H, I, and J under Rule 803(6), M.R.Evid., the business record exception to the hearsay rule, and under the pretrial stipulation by both parties. Exhibits G, H, I, and J are written complaints about Crockett's job performance that various police officers filed with Captain John Hall.

The pre-trial order had an exhibit list attached which gave a brief description of each exhibit and noted any

objections. The plaintiff made no objection on the pre-trial order to the admission of exhibits G, H, I, and J. The District Court thus admitted these exhibits over plaintiff's objections at trial, noting that these exhibits could be properly classified as exceptions to the hearsay rule under Rule 803(6), M.R.Evid.

Having stipulated to the admission of documents without foundation, a party may not later raise a hearsay objection at trial. Swenson v. Buffalo Bldg. Co. (Mont. 1981), 635 P.2d 978, 984, 37 St.Rep. 1588, 1594. The District Court did not err by admitting the exhibits without foundation as agreed to by both parties in the pre-trial order. We thus need not discuss whether the exhibits were properly admissible under Rule 803(6), M.R.Evid.

The fourth issue raised on appeal is whether the District Court gave sufficient weight to the reasonable cause finding of the Commission. We hold that the District Court did not err in the weight given to the reasonable cause finding as it was not properly admissible in the first place.

The issue of the admissibility of a reasonable cause finding has not been previously addressed by this Court, but much federal case law exists on the subject of the admissibility under federal law of findings by the Equal Employment Opportunity Commission (EEOC). The majority of the federal circuits generally have held that the admissibility of the EEOC's final decision of cause is a matter of trial court discretion. See, e.g., Walton v. Eaton Corp. (3rd Cir. 1977), 563 F.2d 66; Strong v. Mercantile Trust Co. (8th Cir. 1987), 816 F.2d 429, cert. denied, 108 S.Ct. 759 (1988). The Ninth Circuit has gone even farther and held that EEOC findings are per se admissible. See, e.g., Smith v. Universal Servs., Inc. (5th Cir. 1972), 454 F.2d 154; Bradshaw v. Zoological Soc'y of San Diego (9th Cir.

1978), 569 F.2d 1066. All circuits which admit EEOC findings, however, do so under Rule 803(8) of the Federal Rules of Evidence which is significantly different from Rule 803(8) of the Montana Rules of Evidence.

The Federal Rule generally allows for the admission of agency findings which result from an investigation authorized by law; lack of trustworthiness is the only express limitation upon admission. More specifically, Rule 803(8), Fed.R.Evid. states that the following are excepted from the hearsay rule:

> (8) Public Records and Reports. -- Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth . . . (C) . . . factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

Montana, on the other hand, has adopted the Uniform Rules' version of Rule 803(8) which contains four additional limitations not found in Rule 803(8), Fed.R.Evid. The additional limitation pertinent to the issue of the admissibility of the reasonable cause finding is found in subsection (iv) which reads:

> [T]he following are not within this exception to the hearsay rule: . . . (iv) factual findings resulting from special investigation of a particular complaint, case, or incident . . .

Rule 803(8), M.R.Evid., specifically excludes factual findings such as the reasonable cause finding of the Commission which directly results from an investigation of a particular complaint of discrimination.

15

In Tiemann v. Santarelli Enterprises, Inc. (Me. 1984), 486 A.2d 126, the Supreme Court of Maine, a state which has also adopted the Uniform Rule's version of 803(8), ruled that federal cases decided under the Federal Evidentiary Rule 803(8)(C), were inapposite to a decision made under Maine's Evidentiary Rule 803(8). The Maine court then held that an investigative report of a particular complaint of discrimination was not admissible under Rule 803(8), M.R.Evid. Tiemann, 486 P.2d at 131-132. We similarly hold that the reasonable cause finding of the Montana Human Rights Commission was not properly admissible at trial, and that the District Court erred in admitting it into evidence. This error, however, was not prejudicial to the outcome of this case.

Affirmed.

_____
Justices

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

16