DA 11-0412

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 98

PHILLIP R. BOUDE,

    Plaintiff and Appellant,

  v.

UNION PACIFIC RAILROAD COMPANY,

    Defendant and Appellee.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. ADV 2007-583
Honorable Dorothy McCarter, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            John W. Hart, Rossbach Hart, P.C., Missoula, Montana

            John T. Papa, Todd A. Neilson, Callis, Papa, Hale, Szewczyk & Danzinger, P.C., Granite City, Illinois

        For Appellee:

            J. Daniel Hoven, Sara S. Berg, Daniel J. Auerbach, Browning, Kaleczyc, Berry & Hoven, P.C., Helena, Montana

                Submitted on Briefs:  February 15, 2012

                            Decided:  May 2, 2012

Filed:

             _____

                        Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 On August 9, 2007, Philip Boude filed a Federal Employers' Liability Act (FELA) claim against his employer, Union Pacific Railroad Company, asserting that he experienced a work-related injury on July 29, 2006, due to the Railroad's negligence. Following a seven-day trial in the First Judicial District Court, a jury ruled in favor of Union Pacific. Boude appeals. We reverse and remand.

## ISSUE

¶2 Boude submits the District Court committed multiple errors during the trial. We conclude that the single dispositive issue is whether the District Court abused its discretion in admitting evidence of Boude's termination of employment and the Public Law Board's (PLB) decision affirming his termination.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 Boude began working for Union Pacific in May 2005. He completed conductor training within a few months and was assigned conductor duties on various Union Pacific trains. On July 29, 2006, Boude was called to take a grain train from Kansas City to Coffeyville, Kansas. The train engineer on that assignment was Paul Belcher. As the grain train was proceeding to its destination, Boude and Belcher were notified by dispatch that their two train engines were required to help push another train (the "stalled train") up and over a steep hill. They were instructed to disconnect the grain cars from their engines, and position their engines behind the stalled coal train and connect them, thus allowing the engineer at the front of the stalled train to control the engines provided by Boude and Belcher. This is called the pusher/helper maneuver. During the execution

2

of this maneuver, Boude claims their engines collided with the stalled train, throwing Boude from his seat into the dash and windshield of his engine and resulting in injury.

¶4    Boude claims he began experiencing neck stiffness within a day of the incident followed by headaches and arm pain over several following days. By October 2006, he had seen multiple doctors for the pain and discomfort. Sometime in October 2006, he notified his direct superiors, Tracy Brown and Alvin Burrows, that he would be missing work due to a neck injury. He assured his managers that his injury was not work-related. However, on November 15, 2006, he filed a personal injury form reporting this incident to Union Pacific for the first time, despite being aware of Union Pacific rules requiring employees to report work-related injuries promptly. By the time Boude reported the incident to his employer he had already contacted a lawyer seeking advice regarding a claim.

¶5    Following Boude's incident report, the Railroad questioned whether Boude was truthful in his account of the incident and his claim of injury; therefore, Union Pacific held a disciplinary hearing which Boude attended with his union representative. Subsequently, on December 6, 2006, the Railroad terminated Boude's employment based on his delay in reporting his injuries, and Union Pacific's belief that Boude had lied to his managers about the incident. Boude appealed his termination to the PLB, a body made up of union, railroad and neutral members. The PLB is an "arbitral tribunal that reviews the outcome of a railroad's investigative hearing to ascertain whether the result is consonant with the terms of the CBA between the railroad and its union employees." *Kulavic v. Chicago & Ill. M. Ry. Co.*, 1 F.3d 507, 513 (7th Cir. 1993).

3

¶6     On December 31, 2006, the PLB, relying exclusively on the evidence presented at the Railroad's hearing and not on an independent investigation, affirmed the Railroad's decision to terminate Boude. The PLB cited evidence presented at the hearing that Boude's injury could be attributed to previous injuries sustained by Boude prior to his employment with Union Pacific. The PLB concluded that Boude's failure to promptly notify the Railroad deprived Union Pacific of the opportunity to conduct a meaningful investigation of the incident and determine whether the Railroad needed "to correct any potential workplace hazard so as to prevent injury to other employees or persons." The PLB ruled that Boude's failure to act in a timely manner "must be viewed as a major violation of conduct necessary in an employee-employer relationship as concerns such matters." It therefore upheld the Railroad's termination decision. Boude did not appeal this decision.

¶7     On August 9, 2007, Boude filed a FELA claim against Union Pacific asserting that it negligently failed to provide him with a safe work environment and, as a result, he was injured. In September 2009, Boude moved to have the District Court exclude from evidence any reference to his termination from Union Pacific, including but not limited to the PLB report affirming his termination. In its Order filed November 2, 2009, the District Court, in a single statement, ruled that the evidence of Boude's termination and the reason for the termination "may be relevant"; therefore, the court denied his motion in limine. On January 13, 2011, Boude moved for reconsideration of the District Court's ruling denying his motion in limine. The District Court denied the motion to reconsider. The PLB report was admitted into evidence during the direct examination of Tracy

4

Brown, the Manager of Operating Practices for the Union Pacific subdivisions worked by Boude in the summer of 2006.

¶8 Beginning with opening arguments and periodically throughout the trial, the jury heard evidence of Boude's termination for dishonesty and for failing to timely report the incident. Boude's termination from employment was mentioned no fewer than fifteen times. The PLB report, along with other exhibits, was provided to the jury during their deliberations. The jury ultimately ruled that Union Pacific was not negligent. Boude appeals.

## STANDARD OF REVIEW

¶9 A district court's ruling on a motion in limine is an evidentiary ruling that this Court reviews for an abuse of discretion. *State v. Edwards*, 2011 MT 210, ¶ 12, 361 Mont. 478, 260 P.3d 396.

## DISCUSSION

¶10 *Did the District Court abuse its discretion in admitting evidence of Boude's termination and the Public Law Board decision affirming his termination?*

¶11 Boude argues that evidence of his termination was irrelevant to whether the Railroad negligently provided an unsafe work environment for its employees. Additionally, Boude asserts that the written decision of the PLB was inadmissible hearsay, unduly prejudicial to him, untrustworthy, and confusing for the jury. Union Pacific disagrees with these assertions of error.

¶12 Montana Rule of Evidence 801 (Rule 801) defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in

5

evidence to prove the truth of the matter asserted." "Statement" is "(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion." A "declarant" is "a person who makes a statement." In the context of this case, the PLB is the "declarant" and the "statement" is the written PLB report affirming Boude's termination on the grounds of dishonesty and delay. As the PLB ruling was admitted in order to affirm Boude's termination for dishonesty and delay, it was clearly presented to "prove the truth of the matter asserted." As such, we conclude the PLB decision was hearsay and inadmissible unless one of the exceptions in Rule 803 applied.

¶13 Union Pacific maintains that Rule 803(8) provides an exception to the hearsay rule allowing admission of the PLB report. This Rule states:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . .
>
> (8) Public Records and Reports. To the extent not otherwise provided in this paragraph, records, reports, statements, or data compilations in any form of a public office or agency setting forth its regularly conducted and regularly recorded activities, or matters observed pursuant to duty imposed by law and as to which there was a duty to report, or factual findings resulting from an investigation made pursuant to authority granted by law. The following are not within this exception to the hearsay rule: (i) investigative reports by police and other law enforcement personnel; (ii) investigative reports prepared by or for a government, a public office, or an agency when offered by it in a case in which it is a party; (iii) factual findings offered by the government in criminal cases; (iv) factual findings resulting from special investigation of a particular complaint, case, or incident; and (v) any matter as to which the sources of information or other circumstances indicate lack of trustworthiness.

Union Pacific submits that the PLB decision was a "public record" and as such was admissible.

6

¶14 Boude counters that the PLB report actually falls within Rule 803(8)(iv) and (v) and is therefore not within the exceptions to the hearsay rule listed in the first sentence of Rule 803(8). He asserts that the PLB decision contained factual findings gleaned from Union Pacific's special investigation concerning his case, and was not the result of an investigation "made pursuant to authority granted by law." He further argues that the report's findings are inherently untrustworthy because the testimony at the disciplinary hearing was "unsworn, uncounseled and not subject to any rules of evidence or discovery."

¶15 To support his argument Boude relies heavily on *Sleigh v. Jenny Craig Weight Loss Centres, Inc.*, 984 P.2d 891 (Ore. App. 1999). *Sleigh* interprets Oregon's Evidence Rule 803(8)(c) which provides:

> The following are not excluded by Oregon's Hearsay Rule:
>
> .   .   .
>
> (8) Records, reports, statements or data compilations, in any form, of public offices or agencies, including federally recognized American Indian tribal governments, setting forth:
>      (c) In civil actions and proceedings and against the government in criminal cases, factual findings, resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

This provision, while similar to the first sentence of Montana Rule 803(8), does not provide for the exceptions to Montana Rule 803(8)(i)-(v), and therefore is somewhat distinguishable. However, *Sleigh* does stand for the proposition that admissible "factual findings" resulting from an investigation conducted pursuant to law are limited to reports based upon personal knowledge of the investigator or upon verifiable facts rather than

7

opinion; otherwise, such findings are inadmissible as hearsay. *Sleigh*, 984 P.2d at 893. In other words, while "factual findings resulting from an investigation made pursuant to authority granted by law" would be admissible, factual findings "resulting from special investigation of a particular complaint, case, or incident" are not. Rule 803(8)(iv).

¶16 We interpreted Rule 803(8)(iv) in *Stevenson v. Felco Ind.,* 2009 MT 299, 352 Mont. 303, 216 P.3d 763, in a manner relevant to this case. In *Stevenson*, Stevenson began working at Felco in 1995 and was fired in April 2005, allegedly for failing to meet a cold-call quota instituted by his new manager. *Stevenson,* ¶¶ 5-6. Stevenson filed a claim with the Montana Department of Labor & Industry (DOLI) Human Rights Bureau (HRB). He claimed Felco had discriminated against him based upon his age. The HRB investigator interviewed several of Stevenson's co-workers and reviewed pertinent documents. The examiner subsequently ruled in favor of Felco concluding that no age discrimination occurred. *Stevenson*, ¶ 7.

¶17 Stevenson subsequently brought a wrongful discharge and age discrimination action against Felco. He filed a motion in limine, seeking to preclude Felco from presenting comments and allegations at trial that were submitted to the HRB investigator and included in the HRB Report, but he did not specifically request that the HRB Report be excluded. *Stevenson*, ¶¶ 9-14. During the jury trial, Felco introduced the HRB Report into evidence over Stevenson's objections. The jury returned a verdict for Felco. We reversed and remanded the case on the ground that the district court erred in admitting the HRB Report, which we concluded was "patently inadmissible and highly prejudicial." *Stevenson*, ¶ 47.

8

¶18 We observed in *Stevenson* that Rule 803(8)(iv) "specifically excludes factual findings such as the reasonable cause finding of the [HRB] which directly results from an investigation of a particular complaint of discrimination." *Stevenson*, ¶ 30, citing *Crockett v. City of Billings*, 234 Mont. 87, 98, 761 P.2d 813, 820 (1988). We noted that reports issued by governmental agencies, because of their "official" nature, may well carry inordinate weight in the minds of jurors. *Stevenson*, ¶ 43. We concluded that even though Stevenson had failed to comply with a pretrial order, the court could not "admit patently inadmissible and substantially prejudicial evidence" as a sanction. *Stevenson*, ¶ 45. In the matter before us, the jury heard evidence that Boude was fired for dishonesty and that the PLB officially affirmed his termination. Like the investigative findings of the HRB, the decision of the PLB resulted from the investigation of a particular complaint, and was "patently inadmissible and highly prejudicial." We interpret Rule 803(8)(iv) to preclude the admission of the PLB report in the case before us as inadmissible hearsay and prejudicial.

¶19 The error in admitting the PLB report is compounded by the fact that Boude's termination and the PLB decision were completely immaterial and irrelevant to the question of whether the Railroad negligently caused Boude's claimed injuries. Evidence which is not relevant is not admissible. M. R. Evid. 402.

¶20 Additionally, the PLB order would arguably be inadmissible as well under Rule 803(8)(v), in that it lacks the trustworthiness attendant to proceedings conducted by a neutral arbiter. At the disciplinary hearing, Boude was not represented by counsel, he did not have subpoena power, and his employer, the Railroad, acted as both judge and jury.

9

The PLB, in turn, simply reviewed the Railroad's disciplinary decision and upheld it. As noted in *Kulavic*, PLB procedures "are less protective of constitutional guarantees than are the procedures employed in the United States courts." *Kulavic*, 1 F.3d at 518. More to the point, in that they are wholly conducted in a railroad-controlled environment, PLB proceedings lack guarantees of trustworthiness. Thus, the evidence was inadmissible on three separate stand-alone grounds.

¶21    The Railroad argues that should this Court conclude that the District Court abused its discretion in admitting this evidence, the error was harmless in the face of substantial admissible evidence that supported the jury's finding that the Railroad was not negligent. We concede that there was substantial evidence to support the jury verdict; however, there was also sufficient evidence from which the jury could have concluded that the Railroad was in fact negligent and caused injury to Boude. The problem is that we cannot know how much of an impact the "highly prejudicial" and irrelevant evidence had on the members of the jury. Where the impact of clearly inadmissible evidence is conceivably outcome-determinative, we conclude the only appropriate course is reversal. As we noted in *Pacificorp v. Dep't. of Revenue*, 254 Mont. 387, 398, 838 P.2d 914, 920, if substantial rights are prejudiced, reversal is appropriate. "The test of prejudicial error requiring reversal is whether there is a reasonable possibility the inadmissible evidence might have contributed to the verdict."

¶22    Finally, because Union Pacific disputed Boude's claim of injury, it was entitled to introduce evidence that Boude submitted an untimely report of injury and argue that he made dishonest statements to management in connection with his claim. Such evidence

10

was relevant to Union Pacific's contention that Boude exaggerated the collision and was attempting to recover for a preexisting injury, and was relevant to its claim that Boude was not credible. This evidence was therefore admissible. It will also be admissible on retrial. However, evidence of Boude's termination from employment and the PLB report will not be admissible.

## CONCLUSION

¶23 For the foregoing reasons, we reverse the District Court's denial of Boude's motion in limine pertaining to his termination and the PLB ruling, and remand for further proceedings in accordance with this Opinion.


/S/ PATRICIA COTTER


We concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ JIM RICE


Justice Beth Baker, dissenting.

¶24 I agree that it was error under M. R. Evid. 803(8) to admit the PLB report into evidence at trial but, based on a thorough review of the record, I would conclude that the District Court did not abuse its discretion in admitting evidence of Boude's termination and that Boude has not met his burden of proving prejudice from admission of the report.

¶25     The analysis should begin by acknowledging the limited scope of an appellate court's review of a jury verdict in a civil case. We repeatedly have recognized that we "'must exercise the greatest self-restraint in interfering with the constitutionally mandated processes of jury decision.'" *Seltzer v. Morton*, 2007 MT 62, ¶ 94, 336 Mont. 225, 154 P.3d 561 (quoting *Kneeland v. Luzenac Am., Inc.*, 1998 MT 136, ¶ 53, 289 Mont. 201, 961 P.2d 725). Because of the deference accorded a jury's verdict, the law is clear that a district court will not be reversed for improperly admitting evidence unless "substantial prejudice to the complaining party [is] shown." *Green v. Green*, 181 Mont. 285, 293, 593 P.2d 446, 451 (1979). In other words, "a reversal cannot be predicated upon an error in admission of evidence, where the evidence in question was not of such character to have affected the result." *In re A.N.*, 2000 MT 35, ¶ 55, 298 Mont. 237, 995 P2d 427; *Mason v. Ditzel*, 255 Mont. 364, 371, 842 P.2d 707, 712 (1992); *Lauman v Lee*, 192 Mont. 84, 90, 626 P.2d 830, 834 (1981).

¶26     Liability in a FELA claim is premised on negligence. The threshold issue Boude was required to prove was that Union Pacific breached its duty to provide him with a reasonably safe workplace. "FELA does not require an employer to exercise the highest degree of care, but only the same degree of care as an ordinary, reasonable person would exercise in similar circumstances." *Martinez v. Union Pac. R.R. Co.*, 82 F.3d 223, 228 (8th Cir. 1996). Under the FELA causation standard, if the Railroad breached its duty, it is liable if its negligence "played a part—no matter how small—in bringing about the injury." *Weber v. BNSF Ry. Co.*, 2011 MT 223, ¶ 26, 362 Mont. 53, 261 P.3d 984. The jury in this case answered "no" to the threshold question on the special verdict form,

12

whether the Union Pacific was negligent, and thus did not answer any other questions in reaching its final verdict.

¶27    Although the Court discusses without distinction the PLB report and Boude's termination, it is important to evaluate the two items of evidence separately since their admissibility is governed by different rules of evidence.

Boude's Termination from Employment

¶28    The Union Pacific terminated Boude's employment in this case because he did not report the July 29 incident for over four months, in violation of the railroad's strict policies on prompt reporting of injuries. Tracy Brown, Union Pacific's manager of train operations at the time, testified that when Boude first contacted him in October about his neck pain, Boude assured him it was not a work-related injury. Approximately three weeks later, Boude called Brown to advise him that the injuries were in fact work-related. Brown attempted to set a meeting with Boude to review the incident with him and complete the required paperwork, but Boude put him off. Boude did not meet with Brown, but later filed the incident report form with help from an attorney. Boude did not object to this testimony at trial, and concedes—as does the Court (Opinion, ¶ 22)—that his "dishonest statements to management" were relevant and admissible at trial. Boude argued in his motion in limine, however, that evidence of his termination for that dishonesty should be excluded because it was not relevant and "would only confuse the jury as to the amount of damages," in particular his claim for lost future earnings. On appeal, Boude again emphasizes that the fact of termination did not, as a matter of law,

13

affect the quantum of damages and the evidence "only confused the jury *as to the measure of Plaintiff's damages*." (Emphasis added.)

¶29 A district court has broad discretion to determine whether or not evidence is relevant. *State v. Hardman*, 2012 MT 70, ¶ 13, 364 Mont. 361, ___ P.3d ___. Courts in FELA cases generally have held that a worker's termination from employment does not preclude his claim for lost earnings if the loss of earnings is alleged to have resulted from the worker's injuries and not from an alleged wrongful termination. *Martinez*, 82 F.3d at 227; *State ex rel. Union Pac. R.R. v. Dierker*, 961 S.W.2d 816, 823 (Mo. 1998); *Torres v. Union Pac. R.R. Co.*, 2006 U.S. Dist. LEXIS 84333, *4-5 (E.D. Ca. 2006); *Graves v. BNSF Ry. Co.*, 77 F. Supp. 2d 1215, 1219 (E. D. Okla. 1999). Based on this authority, the District Court agreed with Boude that he was entitled to present evidence of lost wages beyond the date of his termination. Boude argues that Union Pacific nonetheless used the evidence of his termination to urge the jury not to award future wages for job he no longer had.

¶30 The Eighth Circuit U.S. Court of Appeals recently clarified that its decision in *Martinez* did not create a firm rule that a railroad employee's termination could never be admissible in the employee's FELA case. *Wright v. Ark. & Mo. R.R. Co.*, 574 F.3d 612, 618-19 (8th Cir. 2009). The court distinguished *Martinez* and upheld the admission of the plaintiff's termination where it was offered to counter the impression that his injuries were the only reason he no longer worked for the railroad. *Wright*, 574 F.3d at 619. Here, given the testimony at trial and in light of the trial court's broad discretion in evidentiary rulings, admission of Boude's termination likewise was not reversible error.

14

¶31 Both Boude and his wife Amber testified that he is in constant pain that has substantially and permanently affected his ability to engage in daily living activities. Boude testified he has been unable to work because of his neck condition and that he had intended to work for the railroad until he reached full retirement eligibility at age 67. Like the court in *Wright*, I would conclude that the district court did not abuse its discretion in admitting evidence of termination where to exclude it could "leave the jury with the impression that physical limitations from the accident were the only reason [Boude] no longer worked at [Union Pacific]." *Wright*, 574 F.3d at 619.

Public Law Board Report

¶32 I concur for the reasons stated by the Court that the PLB report constituted hearsay to which the public records exception provided in M. R. Evid. 803(8) did not apply. The Court emphasizes that the PLB report was not relevant to the questions whether Union Pacific was negligent and whether the negligent performance of the helper/pusher maneuver caused injury to Boude. (Opinion, ¶ 19.) It is this very issue on which we should focus in determining whether admission of the report prejudiced Boude's substantial rights at trial. The report went only to whether Boude's delay in reporting the incident justified termination because he violated Union Pacific's strict policies on timely reporting. The report contained no finding or conclusion that Boude was "dishonest," but did conclude that his delay in reporting "wrongly deprived the Carrier of timely investigation" of the incident and the ability to determine any need to correct workplace hazards. The PLB therefore concluded that Boude's action was "a major violation of conduct necessary in an employee-employer relationship as concerns such matters."

15

Boude did not dispute the relevancy of his delay in reporting and there was considerable testimony at trial about the reasons for the delay. Boude testified he was afraid to report his injury based on a railroad policy that allowed employees to be fired for so much as "breaking a fingernail," but he was contradicted by the other three railroad employees on site that day, each of whom rejected this notion and stated the only thing they had to be afraid of was failure to report an injury in a timely manner.

¶33 With respect to the threshold question whether the railroad was negligent by failing to provide a reasonably safe workplace, the evidence from Paul Belcher, the engineer in the locomotive in which Boude was riding, corroborated Boude's theory that there was a "jolt" from the slack action that was "one of the more severe" run-ins he had experienced. However, he testified that Boude never made contact with the windshield and never complained to Belcher of any pain or injury until the date of his last day of work in October 2006. Most of the testimony on the issue of negligence centered on whether the engineers had sufficient training on the pusher/helper maneuver and on whether the personnel operating the lead locomotive had communicated adequately with Belcher on the maneuver that day. All three of the other railroad employees involved in the "run-in" testified they did not think the procedure that day was unsafe.

¶34 The record shows that Boude's honesty was called into question by a significant amount of evidence contradicting his claim that the slack action on the date in question caused his neck problems. None of the three other railroad employees on site recalled Boude saying anything that day about being injured or in pain. The medical evidence showed that Boude had a history of cervical spine injuries dating from his work as a

16

police officer. In 1998, his police car was rammed by a suspect during a car chase and he had discomfort in his neck as a result. In 2003, he was helping to carry an obese woman down a flight of stairs when he twisted his leg and felt a pulling in the right shoulder. Pain in his neck resulted and he ultimately was diagnosed with a herniated disc, for which he underwent surgery. The report from a 2004 examination indicated a preexisting degenerative condition even earlier, with Boude noting he was hospitalized at age 12 for neck pain with x-rays said to reveal an unusual calcium deposit in the cervical spine.

¶35 When he applied for work at the Union Pacific, Boude disclosed the prior neck surgery and herniated disc on his medical form. Medical records from the Fall of 2006 (near the time he made his report of the July 2006 incident to Union Pacific) show that Boude reported on at least two occasions that his neck pain symptoms had started in November 2005. He reported to his regular doctor in October 2006 that his neck stiffness and pain had been ongoing in the "last 10 months," and did not tell him about the July 2006 incident. Boude also advised the neurologist that "working on a train on a bumpy route since [November 2005] caused his symptoms to return," but apparently did not mention the July 2006 incident to him, either. A phone record from his doctor's office on October 31, 2006, showed that Boude called back later to ask if his back problem "from last visit could be caused by work. He was told that because of his history and disc disease to 2003 it could not be determined if work was the cause." It was pointed out at trial that Boude had consulted with an attorney prior to seeing the doctor—recommended by the attorney—who ultimately concluded that Boude's neck pain was related to the slack-action incident.

¶36   Our two prior cases considering the erroneous admission of a report in violation of Mont. R. Evid. 803(8)(c) have reached different conclusions as to whether the report's admission was reversible error, based on the evidence and issues in the case. Both cases involved a report of findings from the Human Rights Bureau. In *Stevenson*, ¶¶ 7, 43-44, we held that Stevenson was clearly prejudiced by the District Court's admission of the HRB's finding of "no reasonable cause to believe unlawful age discrimination occurred" in his case. The very issue before the jury was whether the defendant had discriminated against Stevenson on the basis of age. In *Crockett*, 234 Mont. at 93-96, 761 P.2d at 817-19 (1988), the district court, in a non-jury case, had found that the plaintiff established a prima facie case of employment discrimination consistent with the HRB's "reasonable cause" finding, but concluded that the defendant proved a legitimate non-discriminatory reason for failing to hire the plaintiff. Under these circumstances, we held that the District Court's consideration of the HRB's reasonable cause finding for the plaintiff was not prejudicial error. 234 Mont. at 99, 761 P.2d at 820.

¶37   Applying the rationale of these cases in the context of the record here, I would conclude that Boude has not carried his burden of proving prejudice to his substantial rights from the erroneous admission of the evidence. The PLB report, unlike the report erroneously admitted in *Stevenson*, did not go to the very issue the jury was considering but to a collateral issue (lack of Boude's timely report) on which there concededly was other relevant evidence presented to the jury. The evidence therefore was both cumulative and collateral to the central issue in the case—Union Pacific's failure to provide a reasonably safe place to work—on which the testimony was overwhelmingly in

18

the railroad's favor. The safety of the workplace was not an issue about which Boude's honesty was particularly in question, since Belcher corroborated his version of a significant run-in event. What did draw his honesty into question was Boude's claim that the event caused him injury—an issue the jury never even reached and on which there was overwhelming evidence to the contrary. Whether admission of the PLB report affected Boude's damage claim is irrelevant.

¶38 After hearing seven days of testimony from sixteen different witnesses, the jury deliberated for less than two hours before returning an 11-1 verdict for Union Pacific. On appeal, Boude failed to make any response to Union Pacific's arguments that, based on the extensive evidence presented at trial, Boude was not prejudiced by admission of the PLB report. Boude also failed to offer any rebuttal to Union Pacific's assertion that he could not have been prejudiced because the jury never reached the issue of causation or damages. Quite clearly, the PLB report should not have been admitted, and Union Pacific did not need the evidence to defend the case. In light of the record and the arguments presented on appeal, however, I would conclude that Boude has not carried his burden of proving prejudice to his substantial rights from the erroneous admission of the report. *Seltzer*, ¶ 65. I would therefore affirm the jury's verdict in favor of Union Pacific. Although the Court does not reach the other issues Boude raised on appeal, I would affirm on those issues as well.

/S/ BETH BAKER

19