DA 08-0370

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 299

EDWARD STEVENSON,

      Plaintiff and Appellant,

v.

FELCO INDUSTRIES, INC.,

      Defendant and Appellee.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DV-2006-298
Honorable Douglas G. Harkin, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Elizabeth A. O'Halloran, Milodragovich, Dale, Steinbrenner &
Nygren, P.C., Missoula, Montana

      For Appellee:

            Timothy D. Geiszler, Geiszler & Froines, PC, Missoula, Montana

Submitted on Briefs:  April 15, 2009

Decided:  September 4, 2009

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1　　Edward Stevenson sued his former employer, Felco Industries, claiming that Felco wrongfully discharged him on the basis of his age. Following a jury trial in the Fourth Judicial District Court in Missoula County, the jury ruled that Felco did not discriminate against Stevenson on the basis of age. Stevenson appeals. We affirm in part and reverse and remand in part.

## ISSUES

¶2　　While Stevenson presents three issues on appeal, only two issues are dispositive. A restatement of the dispositive issues is:

¶3　　Did the District Court abuse its discretion by refusing Stevenson's "motivating factor" jury instruction?

¶4　　Did the District Court abuse its discretion in admitting the Human Rights Bureau's Final Investigative Report?

## FACTUAL AND PROCEDURAL BACKGROUND

¶5　　Ed Stevenson began working as a sales person at Felco Industries on March 13, 1995. He traveled extensively for Felco, selling specialty equipment to contractors primarily in the eastern United States. Stevenson's normal routine was to be on the road for three weeks followed by three weeks in the office. Stevenson claims he was never disciplined or reprimanded by his superiors during his time at Felco.

¶6　　In 2004, Felco promoted Shawn Skinner, one of the company's mechanical engineers, to general manager. Skinner was 29 years old at the time of his promotion. Charged with increasing profits, Skinner's first step was to try to increase sales. In

2

December 2004, Skinner instituted a 25 cold-call per day requirement for the sales staff for the days they were working in their offices. Stevenson failed to reach this daily quota. On April 28, 2005, Stevenson was fired. At the time, he was 66 years old. He claimed that John Felton, Felco's owner, told him "he was being let go because the company was moving in a new direction." Felton, who still worked vigorously at the age of 82, testified that he fired Stevenson because Stevenson consistently failed to meet his cold-call quota. Stevenson was replaced by a male in his thirties, who had limited sales experience.

¶7 Stevenson filed a claim with the Montana Department of Labor & Industry (DOLI), Human Rights Bureau (HRB), alleging that Felco discriminated against him on the basis of age when it terminated him. An HRB investigator conducted an investigation which included interviewing Stevenson and several Felco employees and reviewing numerous documents provided by Felco. In March 2006, the HRB issued its Final Investigative Report (Report) concluding that "Felco's reasons for its actions [were] credible" and "that the allegations of Stevenson's complaint are not supported by a preponderance of the evidence." The investigator recommended "a finding of no reasonable cause to believe unlawful age discrimination occurred in this case."

¶8 In April 2006, Stevenson filed a complaint in the Fourth Judicial District Court against Felco alleging wrongful discharge and age discrimination. On July 11, 2006, the District Court issued a scheduling order which, among other things, instructed the parties to exchange exhibit and final witness lists and file all pretrial motions, including motions in limine seeking to resolve evidentiary conflicts, by February 19, 2007.

3

¶9 On February 19, 2007, Stevenson, through counsel, filed his witness and exhibit lists and a motion in limine with a brief in support. In his motion in limine, he requested that the District Court exclude reference to all comments or allegations that he was a difficult or subordinate employee and that Felco had any cause for firing him other than his failure to make the required number of cold calls.

¶10 On March 2, 2007, Felco filed its list of witnesses and exhibits. Felco's exhibit list included the HRB Report finding no age discrimination by Felco. There is no record of a motion by Felco requesting an extension of time in which to file its witness and exhibit lists. Stevenson, however, did not object to Felco's late disclosure of exhibits, nor did he move to file a late motion in limine in response to Felco's exhibit list.

¶11 On April 25, 2007, the District Court filed its Pretrial Order, signed by both parties' attorneys. The Pretrial Order contained a list of both parties' exhibits and witnesses, and included the HRB Report. Also, on April 25, the court filed an order setting the jury trial. In this order the court, citing *Hunt v. K-Mart Corp.*, 1999 MT 125, 294 Mont. 444, 981 P.2d 275, notified the parties that "[t]rial objections that could have been resolved by a pre-trial motion in limine will be deemed waived if not presented in a timely filed motion in limine."

¶12 On September 27, 2007, Stevenson filed a motion in limine requesting that witnesses be excluded from the courtroom during the trial, that collateral source evidence be excluded, that there be no argument or mention that a party has not called an available witness, and that there be no reference to the existence of motions in limine or any other

effort to exclude evidence. Notably, this late motion and the brief in support of the motion did not mention or seek to exclude the HRB report.

¶13 On October 1, the District Court issued an order with respect to the September motion in limine, stating that the deadline for filing motions in limine was February 19, 2007. The court, nonetheless, gave Stevenson three options. Stevenson could (1) continue the trial to a later date to allow the motion to be fully briefed by both parties and the court to rule on it, (2) acknowledge that the motion had no merit and waive the substance of the motion, or (3) attempt to establish that it was impossible under any circumstances to have earlier anticipated the need for the motion. In response to the District Court's order, Stevenson requested and was granted permission to withdraw the motion in limine.

¶14 A jury trial was held October 10-12, 2007, during which Felco presented the HRB Report to the court for admission. Stevenson's counsel immediately objected to the admission of the HRB investigative report on the ground that it was hearsay and was inadmissible under our decision in *Crockett v. City of Billings*, 234 Mont. 87, 98, 761 P.2d 813, 820 (1988). The court inquired whether Stevenson had filed a motion in limine to exclude the evidence as required by the court's scheduling order. Stevenson's counsel replied that she had not. The District Court denied the motion, explaining that the scheduling order informed the parties that failure to file a timely motion in limine seeking exclusion of trial evidence would result in waiver of the right to object. The court further stated that it would have entertained a late motion in limine "if there's any matter that comes to your attention after the deadline is [sic] for filing the motions and you could not

5

have anticipated that the matter would be raised." Lastly, the trial judge asked Stevenson's counsel if she was surprised that Felco offered the HRB Report at trial. She admitted that she was not. The court therefore allowed Felco to introduce the HRB Report into evidence.

¶15 The jury returned a verdict for Felco after determining that Felco had not fired Stevenson on the basis of his age. Stevenson filed a timely appeal.

## STANDARD OF REVIEW

¶16 The district court has broad discretion to determine whether or not evidence is relevant and admissible pursuant to the Montana Rules of Evidence. We therefore review evidentiary rulings for an abuse of discretion. *Hunt*, ¶ 7. In order for the erroneous admission of evidence to constitute grounds for a new trial under § 25-11-102, MCA, the error must be so significant as to materially affect the substantial rights of the complaining party. *Hunt*, ¶ 7 (citations omitted).

¶17 We also review a district court's decision to impose sanctions for failure to comply with a M. R. Civ. P. 16 scheduling order for abuse of discretion. We accord this deference because the district court sits in the best position to evaluate whether one party has disregarded the rights of the opposing party and what, if any, sanction most appropriately addresses the violating party's conduct. *Germann v. Stephens*, 2006 MT 130, ¶ 23, 332 Mont. 303, 137 P.3d 545 (citations omitted).

¶18 Lastly, we review a district court's refusal to issue a proposed jury instruction for abuse of discretion. *Rohrer v. Knudson*, 2009 MT 35, ¶ 14, 349 Mont. 197, 203 P.3d 759.

6

## DISCUSSION

¶19 *Did the District Court abuse its discretion in refusing Stevenson's "motivating factor" jury instruction?*

¶20 Prior to trial, both parties submitted their proposed jury instructions to the District Court. They also had the opportunity to object to proposed instructions offered by the other party. Among others, Stevenson proposed that the District Court issue the following two jury instructions pertaining to age discrimination:

> (1) To prove a claim of unlawful discrimination, [Stevenson] must establish a prima facie case in support of the allegation of discriminatory treatment. A prima facie case of discrimination is evidence from which the jury can infer that [Stevenson's] termination of employment was motivated by [Felco's] consideration of [Stevenson's] age.

> (2) To establish a prima facie case of age discrimination, [Stevenson] must produce evidence that:
> 1. He was at least 40 years of age;
> 2. He was performing his job satisfactorily;
> 3. He was discharged; and,
> 4. He was replaced by a substantially younger person.
> The burden of proof then shifts to [Felco] to articulate a nondiscriminatory reason for the discharge. The burden then shifts back to [Stevenson] to prove by a preponderance of the evidence that the reasons articulated by the employer for termination are merely a pretext for discrimination.

¶21 At the close of the second day of trial and outside the presence of the jury, the District Court advised the parties of the jury instructions it intended to give and discussed them with the party's attorneys. As that time, the District Court refused Stevenson's jury instruction (1) but issued his jury instruction (2), explaining that instruction (1) was a "duplication" and was "not needed."

¶22 Stevenson did not object at the time but claims on appeal that the refused jury instruction was necessary because Felton gave "direct testimony" that Stevenson's age

7

was a consideration in his decision to terminate Stevenson. During the trial, Felton was asked why he had terminated Stevenson's employment. He responded:

A: Well, I demanded 25 phone calls in a day, and I wasn't getting them. He said it was hard to get.

Q: Any other reasons?

A: I would say he was a year older. I don't remember what it was, 65 or something, saying he was going to slow down. I said, well, that's something we can't do, because we're not where we should be yet. We've got to speed up, not slow down.

Stevenson asserts that Felton's reference to his age was "direct evidence" that Felton considered Stevenson's age and was therefore motivated by that consideration in firing him.

¶23 Felco counters that the jury instructions given by the District Court were a complete and accurate statement of the relevant law and the court correctly refused Stevenson's "motivating factor" instruction. Felco asserts that the instruction proposed by Stevenson but rejected by the District Court is appropriately given only when "both parties agree on the employer's articulated reason [for firing the Plaintiff] and the only contested issue is whether the employer's action is illegal." *Allison v. Town of Clyde Park*, 2000 MT 267, ¶ 14, 302 Mont. 55, 11 P.3d 544 (*citing Reeves v. Dairy Queen, Inc.*, 1998 MT 13, ¶ 18, 287 Mont. 196, 953 P.2d 703).

¶24 Felco submits that the parties do not agree on "the employer's articulated reason" for termination. Stevenson asserts he was fired because of his age; Felco maintains he was fired for performance reasons. During direct examination, Stevenson testified that he and Felton were having "one of [their] friendly conversations" during which Stevenson

8

indicated an interest in "slowing down." Stevenson testified as to the context of this conversation: "I told him . . . you know, John, I'm getting to the age—I'm 66 and you start thinking about those things. I said I think that I'm going to start slowing down here. I'm not going to want to do all this three-week traveling crap. What are we going to do then?" Stevenson stated that Felton replied they would work something out. Felton, however, testified that over the last several months Stevenson worked for him, Felton repeatedly told him he could not "slow down" on his cold calls or he would be let go. Felton testified numerous times that Stevenson's failure to make the required number of calls was the reason he terminated Stevenson.

¶25 We disagree that Felton's statement referencing Stevenson's age was "direct evidence" of age discrimination. From the totality of Felton's testimony, it appears that Felton was simply referring to his conversation with Stevenson to indicate that he told Stevenson he could not "slow down" on his calls. As no direct evidence of discrimination was presented at trial and the jury instructions as a whole constituted a correct statement of the law, the District Court did not abuse its discretion when it refused Felton's proposed jury instruction.

¶26 *Did the District Court abuse its discretion in admitting the Human Rights Bureau's Final Investigative Report?*

¶27 Stevenson argues that under *Crockett* the HRB Report was not admissible under M. R. Evid. 803(8)(iv) (Rule 803(8)(iv)); therefore, the District Court committed reversible error and Stevenson is entitled to a new trial.

9

¶28    Felco counters that Stevenson waived any objection to the admission of the Report when he failed to file a motion in limine as required by the court's scheduling order. Alternatively, Felco posits that Stevenson opened the door to admission of the Report by questioning Skinner at trial about a letter Skinner wrote to the HRB investigator as part of the HRB's investigation leading to its Report. Lastly, Felco maintains that if the District Court erred by admitting the Report, the error was harmless because it was cumulative and merely added to the substantial credible evidence presented at trial that Stevenson was fired for poor performance, not because of his age.

¶29    We first address Stevenson's argument that our ruling in *Crockett* renders the HRB Report inadmissible. In *Crockett,* Crockett claimed she was denied a job with the Billings Public Communications Dispatch Center as a telephone operator because she was married to a police officer whom she may, if she was a dispatch operator, be required to dispatch into a dangerous situation. Alleging marital discrimination she filed a claim with the Department of Labor and Industry Human Rights Bureau. After a preliminary investigation, the HRB issued a right-to-sue letter and Crockett filed suit in district court. *Crockett*, 234 Mont. at 91, 761 P.2d at 816. The district court subsequently entered judgment for the City of Billings and Crockett appealed. *Crockett*, 234 Mont. at 92, 761 P.2d at 816. An issue on appeal was whether the district court gave sufficient weight to the HRB's reasonable cause finding. *Crockett*, 234 Mont. at 97, 761 P.2d at 820. Analyzing Rule 803(8), we noted that subsection (iv) expressly states that "factual findings resulting from special investigation of a particular complaint, case, or incident" were not within the hearsay exceptions; therefore, the district court erred in admitting

HRB's reasonable cause findings into evidence at Crockett's trial. *Crockett*, 234 Mont. at 98, 761 P.2d at 820. We concluded in Crockett's case, however, that the error was not prejudicial.

¶30 Our ruling in *Crockett* was unequivocal. We said that Rule 803(8)(iv) "specifically excludes factual findings such as the reasonable cause finding of the [HRB] which directly results from an investigation of a particular complaint of discrimination." *Crockett*, 234 Mont. at 98, 761 P.2d at 820. Under *Crockett* and Rule 803(8)(iv), the HRB Report in the case before us was patently inadmissible. We now examine whether the Report was nonetheless properly admitted because Stevenson waived his objection.

¶31 Felco argues that the District Court could admit the inadmissible Report because Stevenson waived his right to object by failing to file a pretrial motion in limine as instructed by the District Court. In this connection, Felco asserts that Stevenson's objection at trial was not "timely" as required by M. R. Evid. 103 (Rule 103) because he was instructed by the court to present his objection before trial. It cites no authority, however, for the proposition that failure to comply with a scheduling order renders a subsequent objection at the time the evidence is first presented at trial "untimely."

¶32 District courts have broad discretion over the admissibility of evidence and control of pretrial and trial proceedings. M. R. Civ. P. 16 (Rule 16) generally addresses a district court's pretrial case management functions. Rule 16(a) authorizes a court, in its discretion, to direct attorneys and unrepresented parties to appear for pretrial conferences. Rule 16(b) specifically addresses scheduling orders which follow such conferences. *Vermeer of Washington, Inc. v. Jones*, 2004 MT 77, ¶ 9, 320 Mont. 435, 87 P.3d 516.

11

The purpose of a scheduling order is to instruct the parties to complete certain pretrial activities such as discovery and filing pretrial motions by a specific date. This scheduling order allows the district court to better control trial proceedings by resolving many issues during the pretrial phase of the case. Rule 16(f) authorizes a trial court, on its own initiative or upon motion, to order such sanctions "as are just" for misconduct relating to the Rule 16 processes, including an attorney's failure to obey a scheduling or pretrial order. *Vermeer*, ¶ 9.

¶33 In the case before us, the District Court issued a Rule 16(b) scheduling order on July 11, 2006, instructing the parties, among other things, to file all motions in limine by February 19, 2007. The court subsequently notified the parties that failure to submit pretrial motions in limine would result in the party waiving its right to object to the challenged evidence at trial. As threatened, when Stevenson objected to admission of the Report at trial, the District Court enforced its scheduling order. The court admitted the Report holding that Stevenson waived his right to object.

¶34 While the District Court did not call the "waiver" threat a sanction, waiver of the right to object to inadmissible evidence at trial is nonetheless a sanction, especially since it resulted here in the admission of patently inadmissible evidence. We have frequently reviewed the sanctions imposed by a district court for a party's failure to comply with a Rule 16(b) scheduling order and have frequently affirmed the court's sanctions on the ground that "the trial court is in the best position to know whether parties are disregarding the rights of opposing parties in the course of litigation and which sanctions for such conduct are most appropriate." *McKenzie v. Scheeler*, 285 Mont. 500, 506, 949

P.2d 1168, 1172 (1997).  *See also Seal v. Woodrows Pharmacy*, 1999 MT 247, ¶ 26, 296 Mont. 197, 988 P.2d 1230; *Smith v. Butte-Silver Bow County*, 276 Mont. 329, 332, 916 P.2d 91, 93 (1996).

¶35     In *Smith*, the district court dismissed Smith's complaint with prejudice for Smith's failure to comply with pretrial orders compelling discovery.  *Smith*, 276 Mont. at 330, 916 P.2d at 91-92.  Acknowledging that Smith committed discovery abuses and that we typically defer to the decision of the district court on sanctions, we nonetheless reversed the *Smith* district court.  We explained that while dismissal with prejudice was statutorily authorized, it was too severe a consequence for a limited failure to comply with a discovery order that resulted in limited prejudice to the other party.  *Smith*, 276 Mont. at 340, 916 P.2d at 97.  We noted, too, that the district court had warned Smith that failure to provide the expert-related information would result in a sanction far less onerous that dismissal with prejudice.  *Smith*, 276 Mont. at 338, 916 P.2d at 96.  Concluding that the district court had other available sanctions and that the "dismissal" sanction was too severe for the discovery misdeeds, and much more severe than threatened, we reversed the district court.  In so doing, however, we advised, "where a court expressly warns of the consequences to follow from a party's failure to comply, the court should impose sanctions accordingly."  *Smith*, 276 Mont. at 340, 916 P.2d at 97.

¶36     As acknowledged above, the District Court in the case before us threatened a sanction in its scheduling order; i.e., waiver of the right to object at trial to evidence that could have been excluded by a pretrial motion in limine.  The court then imposed the threatened sanction.  The distinction between this case and other cases where we have

13

supported a district court's decision to impose a threatened sanction is that sanctions such as dismissal with or without prejudice (Rule 37(b)(2)(C)) or denying expert testimony from an unidentified expert witness (Rule 37(b)(2)(B) and *Sunburst School Dist. No. 2 v. Texaco, Inc.,* 2007 MT 183, ¶ 73, 338 Mont. 259, 165 P.3d 1079) or refusing to allow a party to support or oppose designated claims (Rule 37(b)(2)(B)) are sanctions that the Montana Rules of Civil Procedure specifically recognize as being available to a district court in the event a party fails to obey a particular pretrial order. *See* M. R. Civ. P. 16(f). That rule does not, however, contemplate the admission of demonstrably inadmissible evidence as a sanction.

¶37 Here, Stevenson lodged an objection to the admission of the HRB Report, and set forth the specific grounds for the objection, citing authority on point, as expressly contemplated under M. R. Evid. 103(a)(1). By ruling that he had waived his right to object, the court denied Stevenson his right to object to inadmissible evidence under the Montana Rules of Evidence. Whether a trial court may, in the exercise of its authority to control pretrial and trial proceedings, admit clearly inadmissible evidence over objection appears to be a question of first impression in this state.

¶38 Before answering this question, we first consider the alternative grounds offered by Felco as justification for the order admitting the HRB Report. It is worthy to note that Felco does not at this juncture even attempt to argue that the HRB Report actually constituted admissible evidence.

¶39 Felco claims that even if the Report was inadmissible, Stevenson "opened the door" to its admission by questioning Skinner "specifically about the Report." The trial

14

transcript reveals that Stevenson's attorney questioned Skinner about the contents of a letter he had written to the HRB as part of Stevenson's age discrimination claim filed with DOLI. The letter provided a chart showing that another Felco sales representative had shown an increasing sales volume in his territory between 2003 and 2005. Stevenson's counsel questioned whether this growth was due to Felco hiring a sales assistant to aid the sales staff, allowing the sales staff more time to make sales as opposed to performing sales-related administrative tasks. Counsel was attempting to point out that Stevenson did not have the benefit of a sales assistant because the assistant was not hired until after Stevenson was fired; therefore, comparing his performance to that of sales representatives with an administrative assistant was unfair. Stevenson's attorney also asked Skinner about the table of employee ages Skinner included in the same letter. The table showed that Felco had hired five employees since Stevenson's termination, the youngest of whom was 22.8 years old and the oldest 44.8 years. Without citation to supporting authority, Stevenson asserts that "[q]uestioning Skinner about [the foregoing] facts, each of which were relevant and admissible to establish indicia of age discrimination, cannot be deemed to have 'opened the door' to a clearly inadmissible compilation of hearsay and conclusory statements by the Human Rights Bureau investigator."

¶40 "Under the rule of curative admissibility, or the 'opening the door' doctrine, the introduction of inadmissible evidence by one party allows an opponent, in the court's discretion, to introduce evidence on the same issue to rebut any false impression that might have resulted from the earlier admission." *U.S. v. Whitworth*, 856 F.2d 1268, 1285

15

(9th Cir. 1988). "The doctrine does not permit the introduction of evidence that is related to a different issue or is irrelevant to the evidence previously admitted." *Whitworth*, 856 F.2d at 1285 (citations omitted).

¶41    Skinner's letter was not "inadmissible" evidence, nor did Felco object to its admission. Typically, properly admitted evidence does not open the door to curative admissibility unless the court, in its discretion, determines that the inadmissible evidence is necessary under the "rule of completeness." M. R. Evid. 106; *U.S. v. Awon*, 135 F.3d 96, 101 (1st Cir. 1998). In any event, admission of the HRB Report was not required for "completeness." The information Stevenson sought to derive from Skinner's letter was whether the newly hired employees were substantially younger than Stevenson. Such information was not rendered "more complete" by admission of the Report. Nor did the information sought by Stevenson pertaining to Skinner's letter prejudice Felco in a manner that required admitting the HRB Report in the name of fairness. We conclude Stevenson's questioning of Skinner about the contents of his letter to HRB was insufficient to open the door to the admission of the HRB Report.

¶42    Lastly, Felco asserts, if the District Court erred by admitting the Report, it was harmless error because the Report was merely cumulative and the jury heard adequate evidence to convince it that Stevenson was fired for reasons other than age. We acknowledge that the jury heard several Felco employees testify that Stevenson was fired for poor performance; however, such subjective evidence carries far less weight than does the State's independent and detailed investigation and subsequent determination of no discrimination.

16

¶43 Many courts have expressed concern that reports issued by governmental agencies, because of their "official" nature, may cause a jury to give the evidence inordinate weight. *Johnson v. Ford Motor Co.*, 988 F.2d 573 (5th Cir. 1993). Additionally, courts have observed that reports prepared by a disinterested governmental agency pursuant to a legal obligation carry a "badge of trustworthiness." *Boerner v. Brown & Williamson Tobacco Co.*, 394 F.3d 594 (8th Cir. 2005). In *Fowler v. Firestone Tire & Rubber Co.*, 92 F.R.D. 1 (N.D. Miss. 1980), the court, in refusing to admit a government report out of concern that the jury would give it inordinate weight, stated, "any probative value the evidence might have would be far outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *Fowler*, 92 F.R.D. at 2.

¶44 In 2003, an article in the Tort Trial & Insurance Practice Law Journal noted that "undue prejudice 'arises from the inordinate weight that a jury is likely to give to the probable cause determination reached by a government fact-finding body.' " James E. Robinson, *Challenging Admissibility and Use of Government Investigative Reports*, 38 Tort & Ins. L.J. 887, 901 (2003). Similarly, a note entitled *The Trustworthiness of Government Evaluative Reports Under Federal Rule of Evidence 803(8)(C)*, published in the Harvard Law Review (96 Harv. L. Rev. 492, 495 (1982)) explained that "[b]ecause the report has the government's endorsement, the jury might give it too much weight." As indicated above, in order for the erroneous admission of evidence to constitute grounds for a new trial under § 25-11-102, MCA, the error must be so significant as to materially affect the substantial rights of the complaining party. *See also* M. R. Evid. 103(a); *Hunt*, ¶ 7. As the foregoing authorities indicate, the admission of the HRB

17

Report was without question of such significance as to materially affect the substantial rights of Stevenson.

¶45  Bearing in mind the prejudice attendant to the admission of the HRB Report, we now return to the inquiry of whether a court may, in the interests of case control, admit patently inadmissible and substantially prejudicial evidence over objection, as a sanction for a party's failure to comply with a pretrial order. We conclude it may not.

¶46  It is the responsibility of the district court to determine whether evidence is relevant and admissible. Absent a showing of abuse of discretion, the trial court's determination will not be overturned. *Mickelson v. Montana Rail Link, Inc.*, 2000 MT 111, ¶ 35, 299 Mont. 348, 999 P.2d 985 (citations omitted). However, this Court is the final arbiter of questions regarding the ultimate admissibility of evidence, and we conclude that District Court in the case before us abused its discretion by admitting patently inadmissible evidence.

¶47  We do not condone Stevenson's failure to comply with the District Court's pretrial order, and we reiterate that the court had available to it at trial and will have available to it on remand, the host of sanctions permitted under the Montana Rules of Civil Procedure, including the imposition of costs or sanctions as provided by law. Moreover, we caution that our decision here will not apply in instances where admission of the evidence in question is within the district court's broad discretion, or where its admission is harmless error. Rather, it is only in those instances where the evidence in question is patently inadmissible and highly prejudicial will we conclude that a district court errs in

overruling a timely trial objection to the admission of the evidence, notwithstanding an earlier violation of a pretrial order to file a motion in limine.

## CONCLUSION

¶48    For the foregoing reasons, we affirm the District Court's ruling as to the jury instructions but reverse its ruling admitting the HRB Report into evidence.  We remand for a new trial.

/S/ PATRICIA O. COTTER

We concur:

/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS

Justice Jim Rice, concurring in part and dissenting in part.

¶49    I concur with the Court's resolution of Issue 1, but dissent from Issue 2.  I would affirm the District Court.

¶50    Fundamentally, I would not reverse this case because of the clear evidence in support of the jury's verdict that Stevenson was not the victim of age discrimination. Stevenson's challenge to the jury's verdict for lacking substantial evidence[1] dramatically understates the evidence offered by Felco by taking out of context one statement made by Stevenson's 83-year-old boss, and basing his argument on that one statement.  I find

---

[1] This argument is not addressed within the Court's opinion.

19

Stevenson's argument to be somewhat misleading and I agree with Felco that the verdict was well supported by the evidence.

¶51 The Court is troubled by the process that led to the admission of the HRB report into the trial. The Court first faults Felco for failing to cite authority "for the proposition that failure to comply with a scheduling order renders a subsequent objection at the time the evidence is first presented at trial 'untimely.'" Opinion, ¶ 31. I'm not sure what authority Felco could cite for the proposition that when the trial court requires a litigant to do something by a certain time, and the litigant fails to do so, a later attempt is necessarily "untimely." Ipso facto, Stevenson's objection was untimely, and as a matter of common sense and practice, he accordingly waived his objection. Although the Court concludes that the District Court, by so ruling, "denied Stevenson his right to object to inadmissible evidence," Opinion, ¶ 37, the District Court did not deny Stevenson his right to object; the court simply required a timely objection, which Stevenson failed to make. Stevenson's counsel admitted at trial that she was not surprised by Felco's offering of the HRB report, but had simply failed to timely object. The District Court offered Stevenson an opportunity to postpone the trial, but Stevenson declined. Accordingly, Stevenson's actions resulted in a waiver of the right to object, and I would conclude the matter there.

¶52 However, the Court then engages in a "sanction" analysis to determine if the waiver was a sanction that was too severe. It frames the issue as whether a court may "admit patently inadmissible and substantially prejudicial evidence over objection, as a sanction . . . ." Opinion, ¶ 45 The Court acknowledges that the District Court did not consider Stevenson's waiver a "sanction." Further, the parties do not consider the waiver

20

a "sanction," and have not argued that the waiver must be assessed for inappropriate severity as a sanction. I believe the Court's analysis is unnecessary.

¶53 Rather, Stevenson's actual argument is that the admission of the HRB report was prejudicial. He specifically asserts that admission of the report was prejudicial "in light of the error regarding instruction on motivating factors and John Felton's [Stevenson's boss] testimony that he considered age when he terminated Stevenson[.]" However, we have rejected Stevenson's argument about the motivating factors instruction under Issue 1. And I have addressed above the shortcomings in Stevenson's isolated citation to his boss's testimony. In short, I believe Stevenson's prejudice argument is without merit.

¶54 For the same reasons that we concluded that admission of a statutorily, perhaps "patently," inadmissible report was harmless error in *In re Mental Health of A.S.B.*, 2008 MT 82, ¶¶ 35-36, 342 Mont. 169, 180 P.3d 625, I would reach the same conclusion here and affirm.

/S/ JIM RICE