JUSTICE COTTER
delivered the Opinion of the Court.
*33 ¶1 On August 9, 2007, Philip Boude filed a Federal Employers’ Liability Act (FELA) claim against his employer, Union Pacific Railroad Company, asserting that he experienced a work-related injury on July 29, 2006, due to the Railroad’s negligence. Following a seven-day trial in the First Judicial District Court, a jury ruled in favor of Union Pacific. Boude appeals. We reverse and remand.
ISSUE'
¶2 Boude submits the District Court committed multiple errors during the trial. We conclude that the single dispositive issue is whether the District Court abused its discretion in admitting evidence of Boude’s termination of employment and the Public Law Board’s (PLB) decision affirming his termination.
FACTUAL AND PROCEDURAL BACKGROUND
¶3 Boude began working for Union Pacific in May 2005. He completed conductor training within a few months and was assigned conductor duties on various Union Pacific trains. On July 29, 2006, Boude was called to take a grain train from Kansas City to Coffeyville, Kansas. The train engineer on that assignment was Paul Belcher. As the grain train was proceeding to its destination, Boude and Belcher were notified by dispatch that their two train engines were required to help push another train (the “stalled train”) up and over a steep hill. They were instructed to disconnect the grain cars from their engines, and position their engines behind the stalled coal train and connect them, thus allowing the engineer at the front of the stalled train to control the engines provided by Boude and Belcher. This is called the pusher/helper maneuver. During the execution of this maneuver, Boude claims their engines collided with the stalled train, throwing Boude from his seat into the dash and windshield of his engine and resulting in injury.
¶4 Boude claims he began experiencing neck stiffness within a day of the incident followed by headaches and arm pain over several following days. By October 2006, he had seen multiple doctors for the pain and discomfort. Sometime in October 2006, he notified his direct superiors, Tracy Brown and Alvin Burrows, that he would be missing work due to a neck injury. He assured his managers that his injury was not work-related. However, on November 15, 2006, he filed a personal injury form reporting this incident to Union Pacific for the first time, despite being aware of Union Pacific rules requiring employees to report work-related injuries promptly. By the time Boude *34 reported the incident to his employer he had already contacted a lawyer seeking advice regarding a claim.
¶5 Following Boude’s incident report, the Railroad questioned whether Boude was truthful in his account of the incident and his claim of injury; therefore, Union Pacific held a disciplinary hearing which Boude attended with his union representative. Subsequently, on December 6,2006, the Railroad terminated Boude’s employment based on his delay in reporting his injuries, and Union Pacific’s belief that Boude had lied to his managers about the incident. Boude appealed his termination to the PLB, a body made up of union, railroad and neutral members. The PLB is an “arbitral tribunal that reviews the outcome of a railroad’s investigative hearing to ascertain whether the result is consonant with the terms of the CBA between the railroad and its union employees.” Kulavic v. Chicago & Ill. M. Ry. Co., 1 F.3d 507, 513 (7th Cir. 1993).
¶6 On December 31, 2006, the PLB, relying exclusively on the evidence presented at the Railroad’s hearing and not on an independent investigation, affirmed the Railroad’s decision to terminate Boude. The PLB cited evidence presented at the hearing that Boude’s injury could be attributed to previous injuries sustained by Boude prior to his employment with Union Pacific. The PLB concluded that Boude’s failure to promptly notify the Railroad deprived Union Pacific of the opportunity to conduct a meaningful investigation of the incident and determine whether the Railroad needed “to correct any potential workplace hazard so as to prevent injury to other employees or persons.” The PLB ruled that Boude’s failure to act in a timely manner “must be viewed as a major violation of conduct necessary in an employee-employer relationship as concerns such matters.” It therefore upheld the Railroad’s termination decision. Boude did not appeal this decision.
¶7 On August 9, 2007, Boude filed a FELA claim against Union Pacific asserting that it negligently failed to provide him with a safe work environment and, as a result, he was injured. In September 2009, Boude moved to have the District Court exclude from evidence any reference to his termination from Union Pacific, including but not limited to the PLB report affirming his termination. In its Order filed November 2,2009, the District Court, in a single statement, ruled that the evidence of Boude’s termination and the reason for the termination “may be relevant”; therefore, the court denied his motion in limine. On January 13, 2011, Boude moved for reconsideration of the District Court’s ruling denying his motion in limine. The District Court denied *35 the motion to reconsider. The PLB report was admitted into evidence during the direct examination of Tracy Brown, the Manager of Operating Practices for the Union Pacific subdivisions worked by Boude in the summer of 2006.
¶8 Beginning with opening arguments and periodically throughout the trial, the jury heard evidence of Boude’s termination for dishonesty and for failing to timely report the incident. Boude’s termination from employment was mentioned no fewer than fifteen times. The PLB report, along with other exhibits, was provided to the jury during their deliberations. The jury ultimately ruled that Union Pacific was not negligent. Boude appeals.
STANDARD OF REVIEW
¶9 A district court’s ruling on a motion in limine is an evidentiary ruling that this Court reviews for an abuse of discretion. State v. Edwards, 2011 MT 210, ¶ 12, 361 Mont. 478, 260 P.3d 396.
DISCUSSION
¶10 Did the District Court abuse its discretion in admitting evidence of Boude’s termination and the Public Law Board decision affirming his termination?
¶11 Boude argues that evidence of his termination was irrelevant to whether the Railroad negligently provided an unsafe work environment for its employees. Additionally, Boude asserts that the written decision of the PLB was inadmissible hearsay, unduly prejudicial to him, untrustworthy, and confusing for the jury. Union Pacific disagrees with these assertions of error.
¶12 Montana Rule of Evidence 801 (Rule 801) defines “hearsay” as “a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.” “Statement” is “(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion.” A “declarant” is “a person who makes a statement.” In the context of this case, the PLB is the “declarant” and the “statement” is the written PLB report affirming Boude’s termination on the grounds of dishonesty and delay. As the PLB ruling was admitted in order to affirm Boude’s termination for dishonesty and delay, it was clearly presented to “prove the truth of the matter asserted.” As such, we conclude the PLB decision was hearsay and inadmissible unless one of the exceptions in Rule 803 applied.
¶13 Union Pacific maintains that Rule 803(8) provides an exception to *36 the hearsay rule allowing admission of the PLB report. This Rule states:
The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
(8) Public Records and Reports. To the extent not otherwise provided in this paragraph, records, reports, statements, or data compilations in any form of a public office or agency setting forth its regularly conducted and regularly recorded activities, or matters observed pursuant to duty imposed by law and as to which there was a duty to report, or factual findings resulting from an investigation made pursuant to authority granted by law. The following are not within this exception to the hearsay rule: (i) investigative reports by police and other law enforcement personnel; (ii) investigative reports prepared by or for a government, a public office, or an agency when offered by it in a case in which it is a party; (iii) factual findings offered by the government in criminal cases; (iv) factual findings resulting from special investigation of a particular complaint, case, or incident; and (v) any matter as to which the sources of information or other circumstances indicate lack of trustworthiness.
Union Pacific submits that the PLB decision was a “public record” and as such was admissible.
¶14 Boude counters that the PLB report actually falls within Rule 803(8)(iv) and (v) and is therefore not within the exceptions to the hearsay rule listed in the first sentence of Rule 803(8). He asserts that the PLB decision contained factual findings gleaned from Union Pacific’s special investigation concerning his case, and was not the result of an investigation “made pursuant to authority granted by law.” He further argues that the report’s findings are inherently untrustworthy because the testimony at the disciplinary hearing was “unsworn, uncounseled and not subject to any rules of evidence or discovery.”
¶15 To support his argument Boude relies heavily on Sleigh v. Jenny Craig Weight Loss Centres, Inc., 984 P.2d 891 (Ore. App. 1999). Sleigh interprets Oregon’s Evidence Rule 803(8)(c) which provides:
The following are not excluded by Oregon’s Hearsay Rule:
(8) Records, reports, statements or data compilations, in any form, of public offices or agencies, including federally recognized American Indian tribal governments, setting forth:
*37 (c) In civil actions and proceedings and against the government in criminal cases, factual findings, resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.
This provision, while similar to the first sentence of Montana Rule 803(8), does not provide for the exceptions to Montana Rule 803(8)(i)-(v), and therefore is somewhat distinguishable. However, Sleigh does stand for the proposition that admissible “factual findings” resulting from an investigation conducted pursuant to law are limited to reports based upon personal knowledge of the investigator or upon verifiable facts rather than opinion; otherwise, such findings are inadmissible as hearsay. Sleigh, 984 P.2d at 893. In other words, while “factual findings resulting from an investigation made pursuant to authority granted by law” would be admissible, factual findings “resulting from special investigation of a particular complaint, case, or incident” are not. Rule 803(8)(iv).
¶16 We interpreted Rule 803(8)(iv) in Stevenson v. Felco Ind., 2009 MT 299, 352 Mont. 303, 216 P.3d 763, in a manner relevant to this case. In Stevenson, Stevenson began working at Felco in 1995 and was fired in April 2005, allegedly for failing to meet a cold-call quota instituted by his new manager. Stevenson, ¶¶ 5-6. Stevenson filed a claim with the Montana Department of Labor & Industry (DOLI) Human Rights Bureau (HRB). He claimed Felco had discriminated against him based upon his age. The HRB investigator interviewed several of Stevenson’s co-workers and reviewed pertinent documents. The examiner subsequently ruled in favor of Felco concluding that no age discrimination occurred. Stevenson, ¶ 7.
¶17 Stevenson subsequently brought a wrongful discharge and age discrimination action against Felco. He filed a motion in limine, seeking to preclude Felco from presenting comments and allegations at trial that were submitted to the HRB investigator and included in the HRB Report, but he did not specifically request that the HRB Report be excluded. Stevenson, ¶¶ 9-14. During the jury trial, Felco introduced the HRB Report into evidence over Stevenson’s objections. The jury returned a verdict for Felco. We reversed and remanded the case on the ground that the district court erred in admitting the HRB Report, which we concluded was “patently inadmissible and highly prejudicial.” Stevenson, ¶ 47.
¶18 We observed in Stevenson that Rule 803(8)(iv) “specifically excludes factual findings such as the reasonable cause finding of the *38 [HRB] which directly results from an investigation of a particular complaint of discrimination.” Stevenson, ¶ 30, citing Crockett v. City of Billings, 234 Mont. 87, 98, 761 P.2d 813, 820 (1988). We noted that reports issued by governmental agencies, because of their “official” nature, may well carry inordinate weight in the minds of jurors. Stevenson, ¶ 43. We concluded that even though Stevenson had failed to comply with a pretrial order, the court could not “admit patently inadmissible and substantially prejudicial evidence” as a sanction. Stevenson, ¶ 45. In the matter before us, the jury heard evidence that Boude was fired for dishonesty and that the PLB officially affirmed his termination. Like the investigative findings of the HRB, the decision of the PLB resulted from the investigation of a particular complaint, and was “patently inadmissible and highly prejudicial.” We interpret Rule 803(8)(iv) to preclude the admission of the PLB report in the case before us as inadmissible hearsay and prejudicial.
¶19 The error in admitting the PLB report is compounded by the fact that Boude’s termination and the PLB decision were completely immaterial and irrelevant to the question of whether the Railroad negligently caused Boude’s claimed injuries. Evidence which is not relevant is not admissible. M. R. Evid. 402.
¶20 Additionally, the PLB order would arguably be inadmissible as well under Rule 803(8)(v), in that it lacks the trustworthiness attendant to proceedings conducted by a neutral arbiter. At the disciplinary hearing, Boude was not represented by counsel, he did not have subpoena power, and his employer, the Railroad, acted as both judge and jury. The PLB, in turn, simply reviewed the Railroad’s disciplinary decision and upheld it. As noted in Kulavic, PLB procedures “are less protective of constitutional guarantees than are the procedures employed in the United States courts.” Kulavic, 1 F.3d at 518. More to the point, in that they are wholly conducted in a railroad-controlled environment, PLB proceedings lack guarantees of trustworthiness. Thus, the evidence was inadmissible on three separate stand-alone grounds.
¶21 The Railroad argues that should this Court conclude that the District Court abused its discretion in admitting this evidence, the error was harmless in the face of substantial admissible evidence that supported the jury’s finding that the Railroad was not negligent. We concede that there was substantial evidence to support the jury verdict; however, there was also sufficient evidence from which the jury could have concluded that the Railroad was in fact negligent and caused injury to Boude. The problem is that we cannot know how *39 much of an impact the “highly prejudicial” and irrelevant evidence had on the members of the jury. Where the impact of clearly inadmissible evidence is conceivably outcome-determinative, we conclude the only appropriate course is reversal. As we noted in Pacificorp v. Dep’t. of Revenue, 254 Mont. 387, 398, 838 P.2d 914, 920, if substantial rights are prejudiced, reversal is appropriate. “The test of prejudicial error requiring reversal is whether there is a reasonable possibility the inadmissible evidence might have contributed to the verdict.”
¶22 Finally, because Union Pacific disputed Boude’s claim of injury, it was entitled to introduce evidence that Boude submitted an untimely report of injury and argue that he made dishonest statements to management in connection with his claim. Such evidence was relevant to Union Pacific’s contention that Boude exaggerated the collision and was attempting to recover for a preexisting injury, and was relevant to its claim that Boude was not credible. This evidence was therefore admissible. It will also be admissible on retrial. However, evidence of Boude’s termination from employment and the PLB report will not be admissible.
CONCLUSION
¶23 For the foregoing reasons, we reverse the District Court’s denial of Boude’s motion in limine pertaining to his termination and the PLB ruling, and remand for further proceedings in accordance with this Opinion.
CHIEF JUSTICE McGRATH, JUSTICES WHEAT and RICE concur.